FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA  99 JUL 30 PM 3: 43
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| IRIS STARKS, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 97-B-1660-S |
| CITY OF BESSEMER, BESSEMER UTILITIES, QUITMAN MITCHELL, | } |
| Defendants. | } |

ENTERED
JUL 30 1999

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment of defendants City of Bessemer, Bessemer Utilities, and Quitman Mitchell ("Mitchell"). The present action arises out of claims by plaintiff Iris Starks ("Starks") that defendants violated her rights under 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. Starks contends that she was subjected to gender discrimination in the form of sexual harassment by a fellow employee and that prompt remedial measures were not taken by defendants to correct the situation. Starks further alleges a state law claim of invasion of privacy. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that the defendants' Motion is due to be granted.

### I. FACTUAL SUMMARY

Iris Starks was hired as a secretary for Bessemer Utilities on February 8, 1993. (Yarbrough Mot. for Summ. J., Exh. A, Starks Dep. at 10).[1] She has held the same position for

---

[1] There were two motions for summary judgment filed in this case. One was filed by Jerry Yarbrough ("Yarbrough Mot. for Summ. J.") and the other by defendants City of Bessemer, Bessemer Utilities, and Quitman Mitchell ("Defs' Mot. for Summ J."). Plaintiff settled her claims against defendant Yarbrough.

her entire tenure at Bessemer Utilities. (*Id.* at 10-11). However, her job title was reclassified to an administrative assistant by the Jefferson County Personnel Board. (*Id.* at 8-10).

Starks's claims of sexual harassment arise out of the alleged conduct of Jerry Yarbrough, a fellow employee at Bessemer Utilities. (*Id.* at 61-62). She alleges that Yarbrough made inappropriate comments to her on several occasions, five of which she can specifically recall. However, she does not recall the order in which the inappropriate comments occurred, except that she remembers which comment was first and which was last. (*Id.* at 72).

Starks asserts that on five separate occasions Yarbrough engaged in conduct which amounted to sexual harassment and invasion of privacy.[2] The first instance of such conduct occurred when Yarbrough asked Starks if she knew certain people when she was in high school. (*Id.* at 65). When she responded that she did know some of these people or their families, he stated that she "must have been one hot little number." (*Id.*). On another occasion, Starks claims that Yarbrough walked into her office, and when asked his purpose, he responded that "I just came in to look at you." (*Id.* at 76). Another time Yarbrough walked into Starks's office and said that he thought about her the previous night while watching a show on sexual harassment. (Defs' Mot. For Summ. J., Exh. C at 5). When Starks replied that his comment was sexual harassment, Yarbrough stated that it is not considered sexual harassment unless it comes from an immediate supervisor. (*Id.*). Another instance cited by Starks occurred when Yarbrough was walking behind her and said "well I didn't mean for you to get up, but I'm sure glad you did."

---

[2]Yarbrough denies that any of these incidents occurred. *See* Answer of defendant Jerry Yarbrough. Drawing all reasonable inferences in favor of the plaintiff, the court will assume for purposes of this Motion for Summary Judgment that the incidents as related by the plaintiff did take place.

2

(Defs' Mot. for Summ. J., Exh. B at 5). The final episode of alleged sexual harassment and invasion of privacy occurred when Yarbrough entered Starks's office as she was sealing an envelope. As Starks was licking the envelope, Yarbrough made the comment "ooh" while moving his right hand in the direction of his groin area outside of his pants. (Defs' Mot. for Summ. J., Exh. A, Starks Dep. at 177).

Starks complained to both the Mayor of Bessemer, Quitman Mitchell, and to her immediate supervisor, Charles Nevins, about Yarbrough's conduct. Starks informed the mayor that four to six months after her employment began, Yarbrough referred to her as "one hot little number." (*Id.* at 63, 79). Starks also informed Mayor Mitchell about the incident where Yarbrough told her that he was thinking about her last night. (*Id.* at 99). In response to these complaints, Mayor Mitchell informed Gene Bynum, Yarbrough's supervisor, to keep Yarbrough from spending time in Starks's office. (Defs' Reply to Pl.'s Opp'n to Defs' Mot. for Summ. J., Exh. E, Mitchell Dep. at 24-26). However, Yarbrough was given no specific warnings regarding sexual harassment. (*Id.* at 26). Starks also mentioned both incidents to her direct supervisor, Charles Nevins. (Yarbrough Mot. for Summ. J., Exh A, Starks Dep. at 93). Starks made no further complaints to the mayor. (*Id.* at 102-03). After the last incident of sexual harassment, which occurred after her complaints to the mayor, Starks filed a claim with the EEOC. (Defs' Mot. for Summ J., Exh D).

After Mayor Mitchell was made aware of the EEOC charge, he instructed Sergeant Hicks of the Bessemer Police Department to investigate Starks's complaint. (Pl.'s Evid. Submissions, Tab 3, Pl.'s Exhs 3-8). Mayor Mitchell then presided over a hearing regarding Yarbrough's conduct, whereby he found Yarbrough guilty of conduct unbecoming an employee and

3

recommended that he receive a suspension of seventy days. (Pl.'s Evid. Submissions, Tab 3, Mitchell Dep. at 17-19).

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

### A. Sexual harassment claim

Plaintiff alleges that she was subjected to a hostile working environment on the basis of her sex.[3] Title VII of the Civil Rights Act of 1964, as amended, prohibits employer discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1); *Steele v. Offshore Shipbuilding, Inc.*, 867 F. 2d 1311, 1315 (11th Cir. 1989) (citations omitted).[4] The law recognizes two varieties of sexual harassment: quid pro quo sexual harassment and hostile work environment sexual harassment. *Steele,* 867 F.2d at 1315; *Henson v. City of Dundee,* 682 F.2d 897, 908 n.18 & 910 (11th Cir. 1982). Quid pro quo sexual harassment "occurs when an employer alters an employee's job conditions as a result of employee's refusal to submit to sexual demands." *Steele,* 867 F.2d at 1315. Hostile environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986); *Steele,* 867 F.2d at 1315.[5]

---

[3]Plaintiff purports to bring this case under both Title VII and Section 1981. Section 1981 does not cover discrimination based on gender. *Runyon v. McCrary,* 427 U.S. 160, 167 (1976). Thus, plaintiff's Section 1981 claims against the defendants are due to be dismissed.

[4]"Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also clams liability under sections 1981 and 1983, the legal elements of the claims are identical. A plaintiff asserting either claim must prove intentional discrimination. Therefore, we need not discuss plaintiff's Title VII claims separately from his section 1981 and section 1983 claims." *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir. 1985).

[5]Since Starks does not allege quid pro quo sexual harassment, this court will only address her hostile environment claim.

5

Hostile work environment sexual harassment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations omitted); *Cross v. Alabama*, 49 F.3d 1490, 1507 (1995). The conduct at issue must be severe or pervasive enough to create an "objectively hostile or abusive work environment" to be actionable under Title VII. *Harris*, 510 U.S. at 21. Thus, the "mere utterance" of a remark that engenders offense does not affect the terms, conditions, or privileges of employment to a sufficient degree to violate Title VII. *Henson*, 682 F.2d at 904. In addition, whether an environment is "hostile" or "abusive" must be determined by looking at the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating as opposed to a merely offensive, and whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 22; *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521-22 (11th Cir. 1995).

To establish a prima facie case of hostile work environment sexual harassment, a plaintiff must show: (1) that the employee belongs to a protected group; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment complained of was based on gender; and (4) that the harassment affected a condition of the complainant's employment. *Cross*, 49 F.3d at 1504. These prima facie elements, however, only establish one aspect of an environmental claim; the plaintiff must also establish liability on the part of the employer for the harassment perpetrated by its employees. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, __, 118 S.Ct. 2257, 2265 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, __, 118 S.Ct. 2275, 2284 (1998).

6

Starks, a female, belongs to a protected group. She was subject to unwelcome harassment by Yarbrough. In addition, the harassment she received was based on her gender. However, Starks's claim fails because the fourth prong was not met. Yarbrough's harassment of Starks was not sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

Starks has only alleged five specific instances in which she was harassed by Yarbrough. In these five instances Yarbrough never touched her, propositioned her, commented on her physical characteristics, or even used obscene language in her presence. While Yarbrough's actions do not constitute appropriate conduct in the workplace, the harassment was not sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment. Thus, summary judgment is due to be granted on Starks's sexual harassment claim.

**B.    Plaintiff's § 1985 claim**

The elements for a cause of action under § 1985(3) are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983); *see also, Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627-28 (11th Cir. 1992). Although an existence of a conspiracy may be supported by circumstantial evidence, there must be some indication that the individuals had a "meeting of the minds." *See Burrell v. Bd. of Trustees of Ga. Military College*, 970 F.2d 785, 789 (11th Cir. 1992), *cert. denied*, 507 U.S. 1018 (1993). Starks alleges that Yarbrough and Mitchell conspired to allow

7

Yarbrough to continue his inappropriate behavior. However, there is no evidence that any of the defendants engaged in a conspiracy to harass Starks. Therefore, summary judgment is due to be granted on Starks's § 1985 claim.

### C. Invasion of privacy claim

Under Alabama law, invasion of privacy actually encompasses four distinct "wrongs":

> (1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for a commercial use.

*Patterson v. Augat Wiring Sys., Inc.*, 944 F. Supp. 1509, 1522 (M.D. Ala. 1996) (quoting *Phillips v. Smalley Maintenance Servs., Inc.*, 435 So.2d 705, 708 (Ala. 1983)). FED. R. CIV. P. 8(a) requires claims for relief to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." The Complaint contains no such statement as to any "false light" or "publicity" claims. Because Alabama law with respect to invasion of privacy recognizes four *distinct* wrongs, the court concludes that plaintiff has only alleged an intrusion upon seclusion claim and will address no other invasion of privacy claim. *See Phillips*, 435 So.2d at 708.

The Alabama Supreme Court has recognized that "*the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities*'" constitutes a tortious invasion of privacy. *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 323 (Ala. 1989) (emphasis in original) (citations omitted). "One may invade another's privacy through either an intrusion upon a physical space, such as a trespass, or by an invasion of one's 'emotional sanctum.'" *Carter v. Innisfree Hotel, Inc.*, 661

8

So.2d 1174, 1178 (Ala.1995). "Sexual" concerns have been recognized as fundamental rights, entitled to privacy protection. *Phillips*, 435 So. 2d at 708.

Plaintiff argues that Yarbrough's alleged conduct toward her constitutes a tortious invasion of her privacy. Some conduct which gives rise to a claim of sexual harassment can also give rise to a claim of invasion of privacy. For example, in *Busby* the defendant supervisor made numerous sexually explicit comments to the plaintiffs, openly propositioning them and physically touching them. *Busby*, 551 So. 2d at 324. The court held that based on the evidence in that case a jury could reasonably determine that the supervisor "pried or intruded into the plaintiffs' sex lives in an offensive or objectionable manner and thereby invaded their right of privacy." *Id.* Similarly, in *Phillips*, the evidence showed that the defendant supervisor began harassing the plaintiff by asking explicit questions about her sex life. *Phillips*, 435 So. 2d at 707. Eventually, the supervisor in *Phillips* insisted that the plaintiff engage in oral sex with him at least three times a week and terminated her after she consistently refused. *Id.* As in *Busby*, the *Phillips* court held that the plaintiff had stated a cause of action for the invasion of privacy. *Id.* at 711.

In *McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649 (Ala. 1986), however, the Alabama Supreme Court held that the plaintiff had not alleged sufficient facts to support a claim for invasion of privacy, where the plaintiff alleged that the defendant asked her if she would have an affair with him, repeatedly touched her in a way that the plaintiff found sexually suggestive, and tried to kiss her when the plaintiff drove him to the airport. *Id.* at 650. Although the *McIsaac* court recognized that "'[t]he invasion may be physical intrusion into a place in which the plaintiff has secluded [herself], as when the defendant forces his way into the plaintiff's room in a hotel or insists over plaintiff's objection in entering [her] home,'" the court held that the alleged intrusion

9

and examination into the plaintiff's concerns fell short of that required to constitute the tort of invasion of privacy. *Id.* at 651-52 (quoting RESTATEMENT (SECOND) OF TORTS § 652B (1977)).

To prevail under an intrusion upon seclusion theory, plaintiff must show "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac*, 495 So.2d at 651; *accord Hogin v. Cottingham*, 533 So. 2d 525, 530 (Ala. 1988). To determine whether an intrusion is so offensive as to be actionable, a court must consider the following factors "(1) whether the subject of the intrusion is information which is private or entitled to be private; (2) the means of intrusion; and (3) the purpose for which the information was obtained." *Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1584 (N.D. Ala. 1996) (citing *Hogin*, 533 So. 2d at 531).

In *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F. Supp. 1424 (M.D. Ala. 1996), several plaintiffs sued their employer and several co-employees, including Mark Bodden, contending that Bodden's sexually offensive behavior constituted an intrusion into their private affairs and concerns. They alleged that Bodden made sexual remarks about the manner in which one of the plaintiffs ate bananas, made sexual remarks concerning the plaintiffs' breasts and clothing, inquired of one of the plaintiffs about whether she would like to go skinny-dipping and his desire to see her in a wet tee shirt, asked about the plaintiffs' sexual preferences and their favorite sexual positions, and made generally lewd comments of a sexual nature. *Id.* at 1428-29. The court granted summary judgment on the invasion of privacy claim against Bodden holding that "none of these actions constitute[d] prying into private matters of [plaintiff's] life." *Id.* at 1438. The court further stated that "even if Bodden's actions constituted 'prying' into the private aspects of the plaintiffs' lives, summary judgment would still be due to be granted because the

10

Court [found] that the invasion [was] not such that it would cause shame, humiliation or suffering to a person of ordinary sensibilities." *Id.*

In this case, the alleged comments by Yarbrough are not nearly as offensive and intrusive as those in *Brassfield*. Yarbrough's conduct does not rise to the level of invasion of privacy because none of his actions constituted prying into Starks's private life. Furthermore, even if the court did find that Yarbrough's conduct constituted prying into Starks's private life, the defendants would still be entitled to summary judgment since the invasion was not such that it would cause shame, humiliation or suffering to a "person of ordinary sensibilities." Therefore, the defendants are entitled to judgment as a matter of law on Starks's claim of invasion of privacy.

## IV. CONCLUSION

The court concludes that defendants' Motion for Summary Judgment is due to be granted. All claims against the City of Bessemer, Bessemer Utilities, and Quitman Mitchell will be dismissed with prejudice. An order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 30th day of July, 1999.

SHARON LOVELACE BLACKBURN
United States District Judge

11